# EXHIBIT A

*State Court Documents*

ELECTRONICALLY FILED - 2022 Oct 10 1:56 PM - BEAUFORT - COMMON PLEAS - CASE#2022CP0701943

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF BEAUFORT<br><br>Christine Y. Beltran,<br><br>       Plaintiff,<br><br>v.<br><br>Competiscan, Inc.,<br><br>       Defendant. | IN THE COURT OF COMMON PLEAS<br>IN THE FOURTEENTH CIRCUIT<br><br><br><br>**SUMMONS** |

TO THE DEFENDANT ABOVE NAMED:

  YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is served upon you, and to serve a copy of your answer to this Complaint upon the subscriber at the address shown below within thirty (30) days (thirty five (35) days if served by United States Mail) after service hereof, exclusive of the date of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

            Respectfully Submitted By,

            *s/J. Paul Porter*
            J. Paul Porter (#100723)
            Elizabeth Millender (#104204)
            **CROMER BABB PORTER & HICKS, LLC**
            1418 Laurel Street, Suite A (29201)
            Post Office Box 11675
            Columbia, South Carolina 29211
            Phone 803-799-9530
            Fax  803-799-9533
            paul@cbphlaw.com
            elizabeth@cbphlaw.com

October 10, 2022
Columbia, South Carolina

ELECTRONICALLY FILED - 2022 Oct 10 1:56 PM - BEAUFORT - COMMON PLEAS - CASE#2022CP0701943

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF BEAUFORT<br><br>Christine Y. Beltran,<br><br>                      Plaintiff,<br><br>v.<br><br>Competiscan, Inc.,<br><br>                      Defendant. | IN THE COURT OF COMMON PLEAS<br>IN THE FOURTEENTH CIRCUIT<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

EMPLOYMENT CASE

The Plaintiff complaining of the Defendant respectfully alleges as follows.

PARTIES AND JURISDICTION

1. Plaintiff is a citizen and resident of Beaufort County, South Carolina.

2. Defendant is an Illinois Corporation that employed Plaintiff as a remote/traveling worker in South Carolina.

3. This lawsuit alleges causes of action for: disability discrimination, retaliation (ADA), quantum meruit, and conversion.

4. The events giving rise to these causes of action happened in both Beaufort County and Chicago, Illinois.

5. The parties have sufficient connection to Beaufort County for this Court to exercise personal jurisdiction and venue for this lawsuit.

6. This Court can exercise subject matter jurisdiction over these claims because they are either South Carolina common law claims or federal claims that allow for state court jurisdiction.

7. Plaintiff demands a jury trial on all triable claims and issues.

2

ELECTRONICALLY FILED - 2022 Oct 10 1:56 PM - BEAUFORT - COMMON PLEAS - CASE#2022CP0701943

## FACTUAL ALLEGATIONS

8.     Plaintiff realleges the foregoing where consistent.

9.     Plaintiff worked at Defendant from July 19, 2021, to August 13, 2021.

10.    Plaintiff was hired by Defendant for a sales position selling marketing and competitive research to financial institutions.

11.    Plaintiff had worked in this industry – specifically with financial institutions as customers – since 2000.

12.    Plaintiff left a 21-year job and another company, involved in similar services, to come and work at Defendant based on inducements by Defendant prior to her hire.

13.    Plaintiff was contacted by a recruiter for Defendant on June 21, 2021, named Jennifer Cohen.

14.    Plaintiff then interviewed with the CEO of Defendant, Rich Goldman, and the Human Resources Director for Defendant, Bujeta Vokshi.

15.    Plaintiff was offered the position of Senior Sales Director on the same day of her interview.

16.    Plaintiff accepted the offer verbally and later signed an offer letter.

17.    Plaintiff was given certain assurances about her goals at the outset, prior to signing the offer letter.

18.    Plaintiff, after signing the offer letter and turning in a notice at her prior job, was asked to meet via videoconference with Goldman on July 6, 2021.

19.    In that meeting, and thereafter, Goldman pressured Plaintiff to provide him with her high-level contact list that she had developed over the years in this industry. The list was Plaintiff's personal intellectual property developed by Plaintiff, for Plaintiff, over her several years in the industry.

20.    Plaintiff ultimately did provide her contact list at Goldman's insistence.

21.    Plaintiff flew to Chicago for in-person on-boarding on July 19, 2021.

22.    She flew back via a late-night flight on July 21, 2021.

23. Early the next morning, on July 22, 2021, Goldman called Plaintiff yelling about a number of trivial things given the context and that he knew Plaintiff had a late flight. Goldman yelled at Plaintiff for not having a landline (rather than just her cell phone) and asked her if she had sent emails out to all contacts since coming to Competiscan even though Plaintiff had only worked at Competiscan for 3 days, which were all spent on-boarding.

24. Plaintiff told Goldman that his tone and demeanor were unacceptable.

25. Goldman then made an excuse saying he never onboarded a salesperson remotely and complained he was stretched very thin covering her role.

26. Goldman also told Plaintiff not to send any more emails to customers without his consent.

27. This level of micro-management persisted throughout Plaintiff's brief time working for Defendant and hindered her ability to successfully market Defendant's product.

28. Thereafter, Goldman was almost always aggressive and brash in his calls with Plaintiff.

29. Vokshi (who served in the role of Human Resources Director) was out of the country at this time, and Plaintiff's only upper-level contact at Defendant was Goldman.

30. Plaintiff complained to the recruiter on August 3, 2021, about Goldman's behavior and demeanor. She urged Plaintiff to stay on regardless.

31. On August 5, 2021, Goldman expressed aggravation with Plaintiff on a video-call with at least one co-worker present.

32. On August 6, 2021, Vokshi reached out to Plaintiff about certain onboarding insurance forms.

33. That same day, Goldman engaged in non-stop micromanaging via email, criticism about completed work he claimed was not done, and his frustration about Plaintiff being in a sales meeting that ran late.

ELECTRONICALLY FILED - 2022 Oct 10 1:56 PM - BEAUFORT - COMMON PLEAS - CASE#2022CP0701943

ELECTRONICALLY FILED - 2022 Oct 10 1:56 PM - BEAUFORT - COMMON PLEAS - CASE#2022CP0701943

34. On August 12, 2021, Plaintiff contacted Vokshi about her experience with Goldman since onboarding, including Goldman cussing her out, micromanaging her, and being generally vitriolic in comparison to supervisors Plaintiff had worked with throughout her career.

35. Plaintiff also revealed to Vokshi that she had a disability/brain tremor that affected her communication skills and was exacerbated by the stress Goldman was creating. Plaintiff also complained that – due to micromanagement and a lack of independence – she had very little to do.

36. Vokshi then discussed Plaintiff's complaints with Goldman.

37. Vokshi shared with Goldman that Plaintiff was disabled.

38. Within 1 hour of Plaintiff reporting her concerns to Vokshi, she immediately began being peppered with various email and telephone attacks.

39. The complaints from Goldman were both trivial and profane, including criticism to "don't fucking use two different colors of highlighter" in reference to the highlighter colors Plaintiff had used on her own personal contact list.

40. Goldman then assigned Plaintiff to prioritize a marketing contact list first by creating a top 100, then top 200, then ultimately a top 500 by end of day. All of these assignments were made mid-day or afternoon.

41. This was an objectively impossible task to complete, and Goldman knew that.

42. Then Goldman emailed her telling her she had new, more extensive goals than the goals discussed when she was hired.

43. These changes to Plaintiff's goals that were dramatic, and that Plaintiff would objectively be unable to meet.

44. Plaintiff told Goldman she was not comfortable with the change and asked to set a telephone call.

5

45. On that call, Goldman called Plaintiff a "liar" based on a question she had asked Vokshi about an inconsistency between the 401k plan as expressed in her offer letter versus the Handbook.

46. The next morning, Goldman emailed Plaintiff criticizing her for only prioritizing 18 of 500 contacts. This was untrue, but Plaintiff did not respond to the email because she was focused on other work priorities.

47. Plaintiff had a client meeting at noon. Goldman called Plaintiff 3 minutes before the client meeting and yelled about various trivial things including: highlighter color, fonts, and different colors on Plaintiff's priority sheet.

48. Plaintiff terminated the call by telling Goldman she had to go to the client meeting.

49. Once in the client meeting, Goldman began sending Plaintiff multiple rapid-fire critical emails.

50. At that point, Plaintiff finished the client meeting and resigned via email because it was apparent that Defendant was setting her up for termination and/or creating a work environment so hostile to her and her disability that she would have no choice but to quit.

## FOR A FIRST CAUSE OF ACTION
(ADA Discrimination)

51. Plaintiff realleges the foregoing where consistent.

52. Plaintiff is disabled, and the Defendant knew of her disability.

53. Plaintiff is, and at all times relevant hereto was, qualified to do the job she was hired for with or without reasonable accommodation.

54. Plaintiff performed her job in a competent, if not more than competent, manner.

55. After becoming aware of Plaintiff's disability, Defendant created a hostile work environment for Plaintiff. Goldman subjected Plaintiff to verbal attacks, unattainable goals, frivolous complaints, and micromanagement.

56. These actions were done for no other reason than to discriminate against Plaintiff's disability, and as a consequence, substantially hindered Plaintiff's ability to do her job.

ELECTRONICALLY FILED - 2022 Oct 10 1:56 PM - BEAUFORT - COMMON PLEAS - CASE#2022CP0701943

57. Such conduct by Defendant constitutes disability discrimination in violation of the ADA and ADAAA.

58. For the conduct alleged herein, Defendant has directly and proximately caused and is liable for all damages resulting from Plaintiff's constructive loss of job including: back pay, front pay, back benefits, front benefits, diminished earning capacity, pain and suffering, embarrassment, shock, humiliation, mental suffering, and emotional distress. Plaintiff is also entitled to attorney's fees and costs in accord with federal laws, and Plaintiff is entitled to injunctive relief including reinstatement to her job with reasonable accommodations. Plaintiff further requests and is due pre-judgment interest on all damages recovered and any other legal and equitable remedies available under the law.

59. Defendant's conduct was intentional, and Plaintiff is entitled to punitive damages for the same.

## FOR A SECOND CAUSE OF ACTION
(ADA Retaliation)

60. Plaintiff realleges the foregoing where consistent.

61. As alleged above, Plaintiff disclosed her disability to her employer in good faith, which is protected conduct under the ADA.

62. In retaliation, Defendant subjected Plaintiff to a hostile work environment in an effort to force her resignation.

63. As such, Defendant has violated the ADA.

64. As a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, physical injuries, loss to professional standing, character and reputation, and further seeks attorney's fees and costs, prejudgment interest, and any other legal and equitable remedies available under the law.

65. Defendant's conduct was intentional, and Plaintiff is entitled to punitive damages for the same.

ELECTRONICALLY FILED - 2022 Oct 10 1:56 PM - BEAUFORT - COMMON PLEAS - CASE#2022CP0701943

## FOR A THIRD CAUSE OF ACTION
(Quantum Meruit)

66. Plaintiff realleges the foregoing where consistent.

67. Plaintiff conferred a benefit upon Defendant by providing her contact list.

68. Defendants realized and retained that benefit under conditions that make it unjust to retain it without paying its value.

69. Defendants did not pay the value of the benefit to Plaintiff and have retained the list.

70. Plaintiff suffered damages and is entitled to the reasonable value of the contact list and prejudgment interest from Defendant.

## FOR A FOURTH CAUSE OF ACTION
(Conversion)

71. Plaintiff realleges the foregoing where consistent.

72. Plaintiff has an interest in the contact list, her intellectual property, that she had developed over the two decades she spent working in the marketing and advertising industry.

73. Defendant pressured Plaintiff to give them her contact list to use to grow their own business. Plaintiff turned her contact list over to Defendant.

74. Defendant did not have Plaintiff's permission to use her contact list, given it was obtained under false pretenses, for the purpose of growing their business and contacts.

75. As a result of the above, Plaintiff has suffered damages, and Defendant is liable for, and owes to Plaintiff, the market value of Plaintiff's contact list with interest. Plaintiff also seeks punitive damages for Defendant's actions which were reckless and perpetuated with a conscious indifference to Plaintiff's rights.

## PRAYER FOR RELIEF

76. Plaintiff realleges the foregoing where consistent.

77. Plaintiff requests a trial by jury.

ELECTRONICALLY FILED - 2022 Oct 10 1:56 PM - BEAUFORT - COMMON PLEAS - CASE#2022CP0701943

78.     Plaintiff requests that the jury award her all the damages she seeks above against the Defendant where pled.

79.     Plaintiff further requests prejudgment interest.

80.     Plaintiff seeks punitive damages, liquidated damages, and attorney fees and costs where appropriate.

81.     Finally, Plaintiff asks the Court for any further equitable relief it deems just and proper.

**CROMER BABB PORTER & HICKS, LLC**

BY:     s/J. Paul Porter
            J. Paul Porter (#100723)
            Elizabeth Millender (#104204)
            1418 Laurel Street, Ste. A
            Post Office Box 11675
            Columbia, South Carolina 29211
            Phone: (803) 799-9530
            Fax: (803) 799-9533
            paul@cbphlaw.com
            elizabeth@cbphlaw.com

***Attorneys for Plaintiff***

October 10, 2022
Columbia, South Carolina

ELECTRONICALLY FILED - 2022 Oct 10 1:56 PM - BEAUFORT - COMMON PLEAS - CASE#2022CP0701943